IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL NO. 3:11CV652-RJC-DSC

| | |
|---|---|
| SHARAL MCDOWELL, )<br>      Plaintiff, )<br>)<br>vs. )<br>)<br>MICHAEL J. ASTRUE, )<br>Commissioner of Social )<br>Security Administration, )<br>      Defendant.      )<br>                            ) | **MEMORANDUM AND RECOMMENDATION** |

**THIS MATTER** is before the Court on Plaintiff's "Motion for Summary Judgment" (document #13) and "Memorandum in Support ..." (document #14), both filed May 31, 2012; and Defendant's "Motion for Summary Judgment" (document #16) and "Memorandum in Support ... (document #17), both filed July 31, 2012. This case has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B), and these Motions are now ripe for disposition.[1]

Having considered the written arguments, administrative record, and applicable authority, the undersigned respectfully recommends that Plaintiff's Motion for Summary Judgment be <u>denied</u>; that Defendant's Motion for Summary Judgment be <u>granted</u>; and that the Commissioner's decision be <u>affirmed</u>.

**I. PROCEDURAL HISTORY**

On June 3, 2008, Plaintiff filed an application for a period of disability, Social Security

---

[1] Pursuant to the Pretrial Scheduling Order entered on March 12, 2012, this matter is ripe upon the filing of Defendant's Motion and Memorandum. <u>See</u> Document #10. Local Civil Rule 7.1 (E) clarifies that the briefing schedule applicable under Rule 7.1 does not apply in Social Security appeals.

disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI") alleging she was unable to work as of December 17, 2004 due to "fibromyalgia, arthritis, sleep apnea, depression, disc in left arm beyond repair entire body [sic], muscle spasms." (Tr. 214-216, 218-226, 254, 258).[2]

Plaintiff's application was denied initially and on reconsideration. Plaintiff subsequently requested a hearing which was held on June 16, 2011. (Tr. 36-67).

On July 22, 2011, the Administrative Law Judge ("ALJ") issued a decision finding that Plaintiff was not disabled. (Tr. 17-30). Specifically, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date. (Tr. 16). The ALJ also found that Plaintiff suffered from fibromyalgia, arthritis and depression, which were severe impairments within the meaning of the regulations, but did not meet or equal any listing in 20 C.F.R. Pt. 404, Subpt. P, App. 1. (Tr. 19-20). The ALJ then found that Plaintiff retained the Residual Functional Capacity ("RFC")[3] to perform light work[4] with a sit/stand option, occasional bending and raising of her right arm. The ALJ also found that she was precluded from working with fumes or stooping. The ALJ found that Plaintiff had moderate, that is non-disabling, limitations in her ability to understand and

---

[2] Plaintiff's June 3, 2008 application was her second application for disability benefits . She filed an initial application on March 14, 2005 with an alleged onset date of December 17, 2004 (Tr. 76-82). Administrative Law Judge ("ALJ") Clinton C. Hicks issued a decision on May 3, 2008 finding that Plaintiff was not disabled. (Tr. 76-82). Plaintiff never appealed. The doctrine of res judicata precludes Plaintiff from re-asserting claims previously adjudicated. Therefore, the claims at issue are for the period after May 3, 2008, but that prior finding was evidence properly considered by the ALJ. Albright v. Comm'r of the Soc. Sec. Admin., 174 F.3d 473 (4th Cir. 1999); Acquiescence Ruling 00-1(4). Plaintiff also requested that the onset date for her current claims be amended to February 13, 2009. (Tr. 253.)

[3] The Social Security Regulations define "Residual Functional Capacity" as "what [a claimant] can still do despite his limitations." 20 C.F.R. § 404.1545(a). The Commissioner is required to "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] Residual Functional Capacity for work activity on a regular and continuing basis." 20 C.F.R. § 404.1545(b).

[4] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing or pulling of arm or leg controls." 20 C.F.R. §§ 404.1567(b), 416.967(b).

remember detailed instructions, carry out detailed instructions, and complete a normal work day and work week without interruptions from psychologically based symptoms. (Tr. 22). Based on this RFC, the ALJ found that Plaintiff was unable to perform her past relevant work as a shear operator. (Tr. 29).

The ALJ relied upon the Medical-Vocational Guidelines and the testimony of a vocational expert ("V.E.") to conclude that Plaintiff could have performed other work existing in the national economy. (Tr. 29-30). The ALJ found that Plaintiff was not disabled within the meaning of the Social Security Act (Tr. 30).

By notice dated October 24, 2011, the Appeals Council denied Plaintiff's request for further administrative review.

The Plaintiff filed the present action on December 23, 2011. On appeal, Plaintiff assigns error to the ALJ's alleged failure to consider evidence of a decision by another government agency (Medicaid) pursuant to 20 C.F.R. § 404.1512(b)(5) and Social Security Ruling ("SSR") 06-03p; his decision to give less than controlling weight to the opinion of her treating physician, Dr. Alireza Nami, ; and his consideration of her use of a walking cane, her obesity and her credibility. See Plaintiff's "Memorandum in Support ..." 11-23 (document #14). The parties' cross motions are ripe for disposition.

## II. STANDARD OF REVIEW

The Social Security Act, 42 U.S.C. § 405(g) and § 1383(c)(3), limits this Court's review of a final decision of the Commissioner to: (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 390, 401 (1971); and (2) whether the Commissioner applied the correct legal standards. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th

Cir. 1990); see also Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1992) (per curiam). The District Court does not review a final decision of the Commissioner de novo. Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986); King v. Califano, 599 F.2d 597, 599 (4th Cir. 1979); Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972).

As the Social Security Act provides, "[t]he findings of the [Commissioner] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). In Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986), quoting Richardson v. Perales, 402 U.S. 389, 401 (1971), the Fourth Circuit defined "substantial evidence" thus:

> Substantial evidence has been defined as being "more than a scintilla and do[ing] more than creat[ing] a suspicion of the existence of a fact to be established. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

See also Seacrist v. Weinberger, 538 F.2d 1054, 1056-57 (4th Cir. 1976) ("We note that it is the responsibility of the [Commissioner] and not the courts to reconcile inconsistencies in the medical evidence").

The Fourth Circuit has long emphasized that it is not for a reviewing court to weigh the evidence again, nor to substitute its judgment for that of the Commissioner, assuming the Commissioner's final decision is supported by substantial evidence. Hays v. Sullivan, 907 F.2d at 1456 (4th Cir. 1990); see also Smith v. Schweiker, 795 F.2d at 345; and Blalock v. Richardson, 483 F.2d at 775. Indeed, this is true even if the reviewing court disagrees with the outcome – so long as there is "substantial evidence" in the record to support the final decision below. Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

### III. DISCUSSION OF CLAIM

The question before the ALJ was whether the Plaintiff became "disabled"at any time, as

4

that term of art is defined for Social Security purposes.[5]  Plaintiff first argues that the ALJ erred by failing to consider a decision by Medicaid.

The regulations in 20 C.F.R. §§ 404.1512(b)(5), 416.912(b)(5), include "decisions by any governmental . . . agency" finding a claimant disabled as evidence that may be considered by the ALJ.  SSR 06-03p, 2006 WL 2329939, at *6 (Aug. 9, 2006), states that "a disability decision by another governmental . . . agency cannot be ignored and must be considered" but the Social Security Administration is "not bound by disability decisions by other governmental . . . agencies."

There is no evidence of another governmental agency decision finding Plaintiff disabled in the record here.  The evidence cited by Plaintiff is a document entitled "Independent Assessment for Personal Care Services" provided by the North Carolina Division of Medical Assistance ("DMA"). (Tr. 790-802).  The DMA document is apparently related to home health services received by Plaintiff. (Tr. 49, 790-802).  The record does not include evidence of a decision made by DMA, Medicaid or any other agency finding Plaintiff disabled as contemplated by 20 C.F.R. §§ 404.1512(b)(5), 416.912(b)(5) or SSR 06-03p.  There is no basis for the Court to remand for a failure to comply with SSR 06-03p.  See Carr v. Astrue, No. 8:10-cv-02119, 2012 WL 871179, at *12-13 (D.S.C. Feb. 23, 2012) (where record contained references to a claim against and a settlement with an agency in treatment notes but the record did not include a copy of any agency finding or decision, the record did not contain evidence of another agency decision as contemplated by 20 C.F.R. § 404.1512(b)(5)).

---

[5]Under the Social Security Act, 42 U.S.C. § 301, et seq., the term "disability" is defined as an:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .
> Pass v. Chater, 65 F. 3d 1200, 1203 (4th Cir. 1995).

5

Assuming arguendo that the record contained evidence of a disability decision by Medicaid or DMA, the ALJ adequately considered such evidence. The DMA evidence shows that Plaintiff received daily assistance from a certified nursing assistant ("CNA") with some household tasks, bathing and exercise (Tr. 49, 732, 790-802). In determining Plaintiff's RFC, the ALJ specifically discussed the CNA and her daily visits with Plaintiff. This is the only part of the record that could be considered evidence of a Medicaid or DMA decision (Tr. 23-24), other than a few offhand references to "Medicaid" in the treatment notes. (Tr. 727, 729). If the ALJ refers to SSR 06-03p,, and considers evidence related to the decision of another government agency, even without discussing the actual decision, remand is not required. Bradshaw v. Astrue, No. 2:08-cv-033, 2011 WL 4344538, at *7 (W.D.N.C. Sept. 15, 2011) (upholding ALJ decision that failed to discuss a Medicaid decision where the ALJ referred to SSR 06-03p and discussed the relevant medical evidence relating to the Medicaid decision).

Plaintiff next contends that the ALJ failed to afford proper weight to the opinion of her treating physician, Dr. Nami. The Fourth Circuit has held that a treating physician's opinion need not be afforded controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992). A treating physician's opinion on the nature and severity of the alleged impairment is entitled to controlling weight only if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record. See 20 C.F.R. §§ 404.1527(d)(2) (2002); and Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001). Therefore, "[b]y negative implication, if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." Mastro, 270 F.3d. at 178, citing Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996). "An ALJ's determination as to the weight to be assigned to a medical opinion will generally not be disturbed

absent some indication that the ALJ has dredged up 'specious inconsistencies' or has not given good reason for the weight afforded a particular opinion." Christian v. Apfel, No. 98-1673, 168 F.3d 481, 1998 WL 911720, at *2 (4th Cir. Dec. 31, 1998) (per curiam, unpublished) (quoting Scivally v. Sullivan, 966 F.2d 1070, 1076-77 (7th Cir. 1992)) (internal citation omitted).

From June 25, 2007 through March 4, 2010, Dr. Nami treated Plaintiff conservatively (Tr. 20, 384-436, 661-720, 855-874). On December 29, 2009, Dr. Nami rendered an opinion regarding Plaintiff's ability to work (Tr. 721). He stated that Plaintiff could work zero hours per workday, and that she was limited to standing for fifteen minutes at a time, sitting for thirty minutes at a time, lifting zero pounds at all times, occasional lifting of her arms above shoulder level, and occasional bending. Id.

The ALJ discounted Dr. Nami's opinion, finding that it was "not consistent with the totality of the objective evidence of record and is not supported by his treatment notes." (Tr. 28). See Warren v. Astrue, No. 5:08-cv-149, 2009 WL 1392898, at * 3 (E.D.N.C. May 18, 2009) (SSR 96-2p "does not entail that the ALJ must expressly set forth a factor-by-factor analysis of each of the [404.1527(c)(2) factors] in every ruling that bears on the weight given to a medical opinion"); Henley v. Astrue, No. 3:11-cv-488, 2012 WL 2804846, at *4 (W.D.N.C. Jul. 10, 2012) (despite failing to explicitly discuss 20 C.F.R. § 416.927(c)(2) factors, ALJ implicitly ruled by finding that the opinion was contradicted by substantial evidence). The ALJ's assessment of Dr. Nami's opinion was proper.

The ALJ discussed the objective medical evidence in the record bearing on Plaintiff's physical condition, including Dr. Nami's observations that she (1) had a full range of motion in her hips without pain, (2) walked without a noticeable limp, (3) demonstrated full range of motion in her knees and (4) had an upper extremity strength of 5/5. (Tr. 24-26). The record contains

references to Dr. Nami's treatment notes that indicate Plaintiff had a full range of motion in her hips and ambulated without a noticeable limp. (Tr. 386, 390, 393, 396, 399, 401, 404, 411, 431, 433, 436, 662, 664, 667, 670, 673, 678, 681, 683, 686, 691, 694, 697, 700, 703, 706, 859, 866, 873). Dr. Nami also noted that Plaintiff tested negative (meaning no impairment) on the straight leg test and had a normal gait. (Tr. 390, 393, 396, 399, 401, 404, 411). Dr. Nami often found that Plaintiff had no swelling in her knees and that her knees had a full range of motion. (Tr. 386, 390, 393, 399, 401, 404, 697, 700, 703, 859, 866, 873). Finally, Dr. Nami consistently found that Plaintiff had an upper extremity strength of 5/5. (Tr. 386, 396, 398, 401, 404, 697, 700, 703, 859, 866, 873). As determined by the ALJ, these treatment notes do not support Dr. Nami's opinion.

In addition to Dr. Nami's treatment notes, there is other medical evidence in the record contradicting his opinion regarding Plaintiff's ability to work. The ALJ discussed the records of Doctors Frank E. Lorch, John Brendese, and Yates Dunaway. (Tr. 25-26). Dr. Lorch examined Plaintiff in November 2009 and observed that her tandem gait was normal; her lumbar range of motion was normal in flexion but twenty-five percent restricted in extension; and she exhibited no signs of significant hip pathology. (Tr. 739-740). Dr. Lorch also ordered a whole body bone scan[6] which revealed no uptake in the spine or pelvis, meaning that Plaintiff tested negative for abnormalities in those areas. (Tr. 742).[7] Dr. Brendese examined Plaintiff and observed, like Dr. Nami, that Plaintiff had full range of motion in her hips without pain, ambulated without a limp, had full range of motion in her knees, and had an upper extremity strength of 5/5. (Tr. 862-863, 869-870,

---

[6] A bone scan is a nuclear imaging test that diagnoses bone disease and abnormalities and may be ordered to investigate unexplained skeletal pain. Mayo Clinic - Definition of Bone Scan, http://www.mayoclinic.com/health/bone-scan/MY00306 (last visited Jul. 16, 2012).

[7] An abnormal bone scan will appear as increased uptake in the affected area of the injected radioactive tracer used to conduct the bone scan. Massachusetts General Hospital, Nuclear Medicine, http://www.mgh.org/nuclear/bone.html (last visited Jul. 16, 2012).

876-877, 916). Dr. Brandese also examined Plaintiff's spine on multiple occasions, finding tenderness along the spine, but a normal range of motion. (Tr. 882, 902, 925). Dr. Dunaway examined Plaintiff on March 22, 2011, and initially thought Plaintiff's symptoms were consistent with patellofemoral chondrosis,[8] . X-rays later ruled out that diagnosis. (Tr. 854). This evidence is also inconsistent with Dr. Nami's opinion, and the ALJ properly afforded his opinion less weight.

Dr. Nami's opinion also conflicted with the opinion rendered by the state agency medical consultant, Dr. Frank Virgil. (Tr. 499-506). Dr. Virgil opined that Plaintiff could preform light work with environmental limitations, including occasionally lifting twenty pounds, frequently lifting ten pounds and standing or walking about six hours in an eight-hour workday (Tr. 500). Dr. Virgil's opinion is supported by the other medical evidence noted above and may be relied upon as substantial evidence. Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986).

Plaintiff next argues that remand is warranted because the ALJ failed to consider her use of a walking cane. She contends that using a cane prevents her from performing light work since most light work involves walking. The ALJ was not required to consider Plaintiff's use of a cane because there is no objective medical evidence that the cane was prescribed by a physician. Chancy v. Astrue, No. 7:09-cv-44, 2010 WL 2165341, at *5 (E.D.N.C. Mar. 25, 2010) (upholding discounting of claimant's use of a cane where "there was no indication from the medical record that use of a cane was prescribed by a physician").

Similarly, Plaintiff argues that the ALJ did not find her obesity to be a severe impairment and failed to consider how her obesity impacted her ability to work. Pursuant to SSR 02-1p, 2000 WL 628049 (Sept. 12, 2002), the ALJ is required to consider obesity throughout the sequential

---

[8]Patellofemoral chondrosis is "the softening or loss of smooth cartilage, most frequently that which covers the back of the kneecap[.]" http://www.patellofemoral.org/pfoe/PDFs/PF_Chondrosis.pdf (last visited July 16, 2012).

evaluation process. The ALJ considered Plaintiff's obesity and found that it was not a severe impairment. However, the ALJ did find that Plaintiff's obesity could limit her "ability to perform strenuous activities, such as heavy lifting, which has been addressed in the [RFC]." (Tr. 27-28). In formulating Plaintiff's RFC, the ALJ properly considered the combination of all of Plaintiff's impairments, including her obesity (Tr. 23-26). SSR 02-1p, in relevant part, states,

> we will not make assumptions about the severity or functional effects of obesity combined with other impairments. Obesity in combination with another impairment may or may not increase the severity or functional limitations of the other impairment. <u>We will evaluate each case based on the information in the case record</u>.

SSR 02-1p, 2000 WL 628049, at *6 (emphasis added). While Plaintiff's physicians noted her weight, no medical source found that she had work limitations related to her obesity beyond those noted by the ALJ. To the extent that the record supported restrictions related to her physical impairments including obesity, the ALJ adequately restricted Plaintiff to performing a limited range of light work with occasional bending, no stooping, and a sit/stand option. (Tr. 22, 28).

Finally, Plaintiff argues that the ALJ's assessment of her credibility is not supported by substantial evidence. The determination of whether a person is disabled by non-exertional pain or other symptoms is a two-step process. "First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged." <u>Craig v. Chater</u>, 76 F.3d 585, 594 (4th Cir. 1996), <u>citing</u> 20 C.F.R. § 416.929(b); <u>and</u> § 404.1529(b); 42 U.S.C. § 423(d)(5)(A). If there is such evidence, then the ALJ must evaluate "the intensity and persistence of the claimant's pain, and the extent to which it affects [his] ability to work." <u>Id.</u> at 595, <u>citing</u> 20 C.F.R. § 416.929(c)(1); <u>and</u> § 404.1529(c)(1). The regulations provide that this evaluation must take into account:

not only the claimant's statements about his or her pain, but also "all the available evidence," including the claimant's medical history, medical signs, and laboratory findings; any objective medical evidence of pain (such as evidence of reduced joint motion, muscle spasms, deteriorating tissues, redness, etc.); and any other evidence relevant to the severity of the impairment, such as evidence of the claimant's daily activities, specific descriptions of the pain, and any medical treatment taken to alleviate it.

Craig, 76 F.3d at 595 (citations omitted).

The record contains evidence of Plaintiff's fibromyalgia and arthritis – which <u>could</u> be expected to produce some of the pain she claims. Accordingly, the ALJ found that Plaintiff met the first prong of the test. The ALJ then determined that Plaintiff's subjective complaints were not fully credible, as they were not consistent with the objective evidence in the record.

The ALJ provided several reasons for discounting Plaintiff's subjective complaints. In evaluating the intensity, persistence, and limiting effects of pain, the ALJ discussed the objective medical evidence, Plaintiff's treatment records, her daily activities and her failure to seek treatment (Tr. 22-26). See Craig, 76 F.3d at 595 (noting the consistency of a plaintiff's subjective complaints with the medical evidence is "crucial to evaluating the intensity and persistence of a claimant's pain and the extent to which it impairs her ability to work"); Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (viewing gaps in medical treatment as "evidence" that claimant's pain was not as intense as alleged). The medical evidence during the relevant time period does not support Plaintiff's allegations that she could only stand for five to ten minutes at a time (Tr. 46), walk one block (Tr. 49), and had difficulty sitting (Tr. 45), such that she was precluded from performing substantial gainful activity. As noted above, the physical examinations by Drs. Nami and Brendese indicate that Plaintiff had full range of motion in her hips and knees and could walk without a noticeable limp. (Tr. 386, 390, 393, 396, 399, 401, 404, 411, 431, 433, 436, 662, 664, 667, 670, 673, 678, 681, 683, 686, 691, 694, 697, 700, 703, 706, 859, 862-863, 866,

11

869-870, 873, 876-877, 916). Plaintiff also tested negative on the straight leg test on multiple occasions. (Tr. 390, 393, 396, 399, 401, 404, 411). An electromyography and a whole bone scan failed to indicate significant musculoskeletal problems with Plaintiff's spine, knees or lower extremities. (Tr. 739-745). X-rays ordered of Plaintiff's knees by Dr. Dunaway also revealed no abnormalities, and he encouraged Plaintiff to increase her activity. (Tr. 854). As the ALJ noted, Plaintiff's doctors' treatment records do not contain references to her alleged limitations. (Tr. 23). The medical evidence in the record supports the ALJ's credibility finding.

In making his credibility determination, the ALJ also considered Plaintiff's activities of daily living. "The only fair manner to weigh a subjective complaint of pain is to examine how the pain affects the routine of life." Mickles v. Shalala, 29 F.3d 918, 921 (4th Cir. 1994). The ALJ found that Plaintiff performed activities such as cooking, doing puzzles, going outside, childcare, church activities and exercising. (Tr. 45, 47, 49, 266-268). The record also contains evidence of Plaintiff driving (Tr. 47), sewing (Tr. 276), doing laundry (Tr. 274) and participating in aerobics classes (Tr. 653). The evidence concerning Plaintiff's regular activities supports the ALJ's credibility finding. Gross v. Heckler, 785 F.2d 1163, 1166 (4th Cir. 1986) (finding that the pattern of claimant's daily activities suggested that he was not disabled from working).

Plaintiff's statements about her pain were also contradicted by a lack of treatment. Plaintiff testified that she took no pain medications because of allergies (Tr. 48). However, the record shows that Plaintiff is not allergic to pain medication. On February 22, 2011, Dr. Susan Owens, an allergist at the Carolina Asthma & Allergy Center, advised Plaintiff that she was not allergic to pain medication. (Tr. 812-813). Plaintiff repeatedly refused physical therapy (Tr. 600, 854), and Dr. Brendese wrote "[I] was attempting to discuss different treatment options with patient but patient seemed intolerant . . . she is very resistant to developing a Healthcare plan ...." (Tr. 917). Plaintiff's

12

failure to take pain medication and to follow treatment recommendations support the ALJ's credibility finding. Mickles, 29 F.3d at 930 ("an unexplained inconsistency between the claimant's characterization of the severity of her condition and the treatment she sought to alleviate that condition is highly probative of the claimant's credibility").

Plaintiff's argument that the ALJ relied upon "boilerplate" language in weighing her subjective complaints is not persuasive. The ALJ considered the credibility of her complaints along with the medical evidence, her activities of daily living, responsiveness to treatment, and failure to take pain medication.

Although the medical records establish that the Plaintiff experienced pain and mental and emotional difficulties to some extent, as the Fourth Circuit has noted, it is the ALJ's responsibility, not the Court's, "to reconcile inconsistencies in the medical evidence." Seacrist, 538 F.2d at 1056-57.

Simply put, "[w]here conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the Secretary (or the Secretary's designate, the ALJ)." Mickles, 29 F.3d at 923 (citing Simmons v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987)). This is precisely such a case, as it contains substantial evidence to support the ALJ's treatment of the record and the hearing testimony, and his ultimate determination that the Plaintiff was not disabled.

## IV. RECOMMENDATIONS

**FOR THE FOREGOING REASONS,** the undersigned respectfully recommends that Plaintiff's "Motion for Summary Judgment" (document #13) be **DENIED;** that Defendant's "Motion for Summary Judgment" (document #16) be **GRANTED**; and that the Commissioner's

determination be **AFFIRMED.**

## V. NOTICE OF APPEAL RIGHTS

The parties are hereby advised that, pursuant to 28 U.S.C. §636(b)(1)(c), written objections to the proposed findings of fact and conclusions of law and the recommendation contained in this Memorandum must be filed within fourteen (14) days after service of same. Failure to file objections to this Memorandum with the District Court constitutes a waiver of the right to de novo review by the District Judge. Diamond v. Colonial Life, 416 F.3d 310, 315-16 (4th Cir. 2005); Wells v. Shriners Hosp., 109 F.3d 198, 201 (4th Cir. 1997); Snyder v. Ridenour, 889 F.2d 1363, 1365 (4th Cir. 1989). Moreover, failure to file timely objections will also preclude the parties from raising such objections on appeal. Thomas v. Arn, 474 U.S. 140, 147 (1985); Diamond, 416 F.3d at 316; Page v. Lee, 337 F.3d 411, 416 n.3 (4th Cir. 2003); Wells, 109 F.3d at 201; Wright v. Collins, 766 F.2d 841, 845-46 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

The Clerk is directed to send copies of this Memorandum and Recommendation to counsel for the parties; and to the Honorable Robert J. Conrad, Jr.

**SO RECOMMENDED AND ORDERED.**

Signed: August 2, 2012

David S. Cayer
United States Magistrate Judge